In the Matter of RAES PHARMACY, INC., Appellant, v CESAR A. PERALES, as Commissioner of the New York State Department of Social Services, Respondent.

First Department, June 18, 1992

APPEARANCES OF COUNSEL

*Jerome I. Sager* of counsel *(Laurie Lombardo* with him on the brief; *Wise Lerman & Katz, P. C.,* attorneys), for appellant.

*Gerald Slotnik* of counsel *(Harvey M. Berman* with him on the brief; *Robert Abrams, Attorney-General,* attorney), for respondent.

## OPINION OF THE COURT

KUPFERMAN, J.

Petitioner operates a retail pharmacy at 3817 Broadway and has been enrolled as a provider in New York's Medicaid program since it commenced operation in 1983. Subsequent to January 5, 1987, the effective date of 18 NYCRR part 504 (Medical Care—Enrollment of Providers), petitioner was notified by letter dated February 16, 1988 that it was required to submit an application for reenrollment as a provider pursuant to 18 NYCRR 504.10. After submission of its application and an on-site inspection of its premises, respondent notified petitioner, by letter dated August 16, 1988, of his determination to discontinue petitioner's participation in the Medicaid program, effective 60 days from the date of the letter and advised it that it could appeal the denial of its application within that period by requesting reconsideration. Petitioner timely requested such reconsideration and, thereafter, received respondent's notice of his final decision, affirming his original determination, which was dated January 27, 1989 and stated that it was effective 10 days from its date, specifically February 7, 1989. Such notice was served by certified mail, return receipt requested, upon petitioner's attorney with a copy mailed to petitioner.

Petitioner then commenced a CPLR article 78 proceeding by order to show cause dated February 7, 1989 pursuant to which respondent was temporarily restrained and enjoined from terminating petitioner's enrollment as a Medicaid provider. By judgment entered June 14, 1989, the Supreme Court

granted the petition to the extent of annulling respondent's determination and reinstating petitioner, finding that petitioner was entitled to a hearing to review respondent's determination that it had engaged in unacceptable practices. Respondent appealed that judgment but "declined to enforce" his statutory stay pursuant to CPLR 5519 (a) "as a matter of litigation strategy while the appeal was pending." By order entered February 26, 1991, this court unanimously reversed that judgment, reinstated respondent's determination and dismissed the proceeding (170 AD2d 378). That decision was published in the New York Law Journal on February 28, 1991.

It is undisputed that petitioner and his attorney were never served either personally or by mail with a copy of this court's order.

By letter dated March 12, 1991 and addressed to petitioner, respondent notified it that its participation in the Medicaid program had been terminated effective February 27, 1991. On March 18, 1991, petitioner moved in this court for leave to appeal to the Court of Appeals. That day, this court issued an interim stay of termination of petitioner's participation in the Medicaid program. Thereafter, by letter dated March 30, 1991, respondent notified petitioner that it was reinstated as a Medicaid provider effective March 18, 1991. By order entered May 7, 1991, this court granted petitioner leave to appeal to the Court of Appeals and stayed its termination as a Medicaid provider pending its appeal to that court (173 AD2d 1107). On April 30, 1992, after submission of this appeal, the Court of Appeals affirmed our order of reversal (79 NY2d 988).

After respondent refused to reimburse it for approximately $37,000 in Medicaid services rendered by it from February 28, 1991 to March 13, 1991, petitioner brought the instant article 78 proceeding to compel such reimbursement.

Respondent's original position was that petitioner was terminated as a Medicaid provider as of February 28, 1991, the date this court's decision was published in the New York Law Journal. He modified this position in a letter dated April 29, 1991 in which he advised petitioner's attorney that, since the Law Journal published the decision on February 28, 1991, he had "chosen March 1, 1991, as the new effective date of the denial of re-enrollment. In like fashion, the Department's records will also reflect a reinstatement pursuant to a stay pending appeal, effective March 18, 1991, the day notice of same was received."

In support of its petition, petitioner stated that it had never been notified of this court's decision and that it had continued to fill Medicaid prescriptions in reliance upon respondent's computerized Medicaid Eligibility Verification System which was still operational during the period in question.

In response, respondent reverted to his original position that "the day [this court's] order was entered, Raes ceased to be a Medicaid provider." It further argued that, since petitioner's attorney had represented it throughout the litigation, petitioner was charged with knowledge of this court's order and, thus, respondent's failure to serve it does not require respondent to reimburse petitioner. Respondent stated that he does not have the technical means instantaneously to terminate or enroll a provider pursuant to a court order.

Petitioner replied that respondent's position is contrary to his usual practice of continuing to pay providers whose reenrollment had been denied until the applicable order was served with notice of entry and that this is the first time respondent is seeking to terminate a provider without service of the order of the court.

The IAS court denied the petition, finding that, "[w]hile lulled into a sense of security as to when the pharmacy had to cease operation, it is clear that the stay [sic] was known and counsel representing the pharmacy probably had an obligation to advise that no further prescriptions be filled." It further found that, while CPLR 2220 had a role here and it was a close question, the State may not be estopped "willy nilly".

The foregoing, rather lengthy chronology of events is provided for the purpose of demonstrating that throughout these proceedings respondent gave written notice of all of his determinations concerning petitioner's Medicaid reenrollment application. Essentially, this was not done voluntarily or out of courtesy, but because such notices were required by respondent's own regulations. Indeed, 18 NYCRR 504.5 (b) provides that if any application is denied, the applicant shall be given a written notice of the denial, which notice will be effective upon the date it is mailed to the applicant. Despite this latter provision, respondent's notice of his final decision provided that it was effective 10 days from its date.

The point to be derived from all of this is that the mandates of administrative agencies and courts in ordinary circumstances do not have instantaneous effect. In the event the parties or counsel are personally present at the time of a

ruling or order they are not only on notice of it, but, in many instances, bound by its provisions. Where such is not the case, however, the parties and counsel must be made aware of the action affecting them. We are concerned here with a claim for otherwise apparently valid Medicaid charges incurred during the two-week hiatus between the publication of this court's order and respondent's written notice of termination.

Surprisingly, there is no statutory requirement that all court orders must be served in order to be effective. While CPLR 2220 (a) mandates that all orders determining a motion must be entered and filed, subdivision (b) of that rule, which has no counterpart in the predecessor Civil Practice Act, merely provides that when service of an order is made, a mere copy suffices. It does not say when service has to be made (Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C2220:5, at 171). Nevertheless, it is axiomatic that before an order may be enforced, notice of such order must be given to the party against whom it is sought to be enforced.

Additionally, where a party is represented by an attorney, notice is generally required to be given to the attorney. In fact, Executive Law § 168 requires that once an attorney has filed a notice of appearance in a proceeding before any administrative body or officer, a copy of all subsequent written communications or notices to the party involved must be sent to such attorney. Likewise, CPLR 2103 (b) requires that papers to be served upon a party in a pending action shall be served upon the party's attorney. The term "papers" includes notices, pleadings, orders and judgments (3 Carmody-Wait 2d, NY Prac § 20:8).

It is well established that, for purposes of judicial review, an administrative determination does not become "final and binding" (CPLR 217 [1]) and the four-month Statute of Limitations for the commencement of article 78 proceedings does not begin to run until the petitioner receives notice of such determination (*Matter of Edmead v McGuire,* 67 NY2d 714; *Matter of Biondo v New York State Bd. of Parole,* 60 NY2d 832, 834). In the case of appeals of judicial orders, the requirement of service of a copy with notice of entry is strictly construed with respect to limiting a party's time to appeal (*see,* Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C5513:1, C5513:2, at 137-139).

The question then arises as to how notice is to be given.

Generally, it is within the power of the Legislature to pre-scribe the method by which notice is to be given in a particu-lar situation (81 NY Jur 2d, Notice and Notices, § 27). Per-sonal service, service by registered, certified or ordinary mail and now by "electronic means" or "overnight delivery service" (CPLR 2103 [b] [5], [6]) as well as service by publication are the generally prescribed methods in descending order of effec-tiveness, with publication being generally considered the least effective method. "The most common method is ordinary first-class mail to the lawyer's office address" (Siegel, NY Prac § 202, at 293 [2d ed]).

Judiciary Law § 91 (1) empowers this court to designate a daily law journal in which court calendars together with every notice and advertisement of judicial proceedings required to be published in one or more papers in this judicial department are to be published (see also, Rules of App Div, 1st Dept [22 NYCRR] § 601.1). The New York Law Journal has been so designated.

After our decisions and orders are entered, this court mails copies to counsel of record for all parties and our decisions are published in due course in the Law Journal. Publication of court notices and, in some instances in the trial courts, orders is generally regarded as notice to all concerned attorneys, who are expected to keep abreast of such information. Neverthe-less, this court has never held, nor has it ever been intended that publication of our decisions in the Law Journal is a substitute for service of this court's orders.

"[A] determination or judgment of a court may become final and binding, for the purpose of being obeyed, carried out and executed without being final and binding for the purposes of review." (Matter of New York Cent. R. R. Co. v Public Serv. Commn., 238 NY 132, 135) and "[t]wo processes in law may go on at the same time; one to carry out the judgment directed by the court, the other to review that judgment for the purpose of reversing it or setting it aside. The one process does not have to wait upon the other." (Supra, at 135.) Thus, even though service of an order alone is sufficient to enforce it, where a proper notice of entry of such order is never served on the appellant, the time to appeal never starts to run (10 Carmody-Wait 2d, NY Prac § 70:138).

It has consistently been held, however, that "an order must be entered and notice of entry served before an order may be enforced or appealed. (CPLR 2220 [a]; 5513 [a].)" (Talcott

*Factors v Larfred, Inc.,* 115 AD2d 397, 400; *see also, Cultural Center Commn. v Kokoritsis,* 103 AD2d 1018 ["Where a party's rights will be affected by an order, the successful party must serve a copy of the order on the adverse party in order to give it validity *(McCormick v Mars Assoc.,* 25 AD2d 433; see, also, Siegel, NY Prac, § 250, p 309; 2A Weinstein-Korn-Miller, NY Civ Prac, par 2220.02; 2 Carmody-Wait 2d, NY Prac, § 8:105, p 124)."]; *Lyons v Butler,* 134 AD2d 576, 577.) Indeed, it is a long-established general principle that service of the order on the adverse party is necessary to give it validity (Siegel, NY Prac § 250, at 378 [2d ed]; *see, Cygler v MVAIC,* 234 NYS2d 18, 19).

Respondent argues that inasmuch as it could have invoked its statutory stay at anytime, it did not need this court's order as a precondition to excluding petitioner from participating in the Medicaid program and could properly do so without having served a copy of our order with notice of entry. Not surprisingly, he offers no statutory or case law support for this position.

The automatic stay provided to State agencies by CPLR 5519 (a) merely stays all proceedings to enforce the judgment or order appealed from pending appeal and is intended to preserve the status quo pending appeal from an adverse determination *(see, Matter of Willoughby Nursing Home v Axelrod,* 113 AD2d 617, 619). Respondent having voluntarily continued petitioner's status as a Medicaid provider pending his appeal to this court, it never became necessary for petitioner to seek to enforce the Supreme Court's order and the automatic stay never had any practical effect. In any event, it would seem that fundamental fairness would make it incumbent upon respondent to notify petitioner that it was now "invoking" such statutory stay.

The IAS court's observation that counsel for petitioner probably had an obligation to advise his client that no further prescriptions should be filled, presumably because he was charged with notice of our decision when it appeared in the Law Journal, while salutary, overlooks the principle that notice to an attorney is deemed notice to the attorney's client *(see,* 6 NY Jur 2d, Attorneys At Law, § 88). This, however, does not vitiate the requirement of written notice with service being the generally accepted method of giving such notice.

Once a party chooses to be represented by counsel any documents purporting to have legal effect "should be served

on the attorney the party has chosen to handle the matter on his behalf. This is not simply a matter of courtesy and fairness; it is the traditional and accepted practice which has been all but universally codified (see, e.g., CPLR 2103, subd [b]; 7506, subd [d]; Executive Law, § 168; Administrative Procedure Act, § 307)." *(Matter of Bianca v Frank,* 43 NY2d 168, 173.)

Accordingly, in light of respondent's failure to serve petitioner with a copy of this court's order, the publication of our decision in the Law Journal was insufficient to give petitioner the necessary notice of its termination as a Medicaid provider and the judgment of the Supreme Court, New York County (Harold Baer, Jr., J.), entered on or about September 20, 1991, denying the petition and dismissing the proceeding, should be reversed, on the law, and the petition granted to the extent of directing respondent to reimburse petitioner for any Medicaid prescriptions provided by it during the period from February 28, 1991 through March 13, 1991 for which it is otherwise entitled to be reimbursed and for which it has not previously been reimbursed, without costs.

MURPHY, P. J., ELLERIN, Ross and RUBIN, JJ., concur.

Judgment of the supreme Court, New York County, entered on or about September 20, 1991, denying the petition and dismissing the proceeding, is reversed, on the law, and the petition granted to the extent of directing respondent to reimburse petitioner for any Medicaid prescriptions provided by it during the period from February 28, 1991 through March 13, 1991 for which it is otherwise entitled to be reimbursed and for which it has not previously been reimbursed, without costs.